J. S17039/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| N.D.J. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| D.E.J., | : | No. 1609 MDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered September 5, 2019,
in the Court of Common Pleas of York County
Civil Division at No. 2015-FC-001144-03

| | | |
|---|---|---|
| N.D.J., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1629 MDA 2019 |
| | : | |
| D.E.J. | : | |

Appeal from the Order Entered September 5, 2019,
in the Court of Common Pleas of York County
Civil Division at No. 2015-FC-01144-03

BEFORE:  PANELLA, P.J., STABILE, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:  **FILED: MAY 11, 2020**

In these consolidated cross-appeals, D.E.J. ("Mother"), **pro se**, and N.D.J. ("Father") challenge the September 5, 2019 final custody order ("Custody Order") entered in the Court of Common Pleas of York County that awarded shared legal custody of A.D.J., R.L.J., and L.N.J. (collectively, "Children") to Mother and Father and primary physical custody of the Children

to Father; that found Mother in contempt of the trial court's July 24, 2018 custody order and imposed sanctions; and that denied Father's request for relocation. We affirm.

The record reflects that Mother and Father married in January 2001. A.D.J. was born in February 2010; R.L.J. was born in January 2012; and L.N.J. was born in May 2014. Mother and Father separated on June 18, 2015. On June 23, 2015, Father initiated the underlying custody action when he filed an action in divorce and custody against Mother.

On September 17, 2015, the trial court entered a consent custody order awarding shared legal and physical custody of the Children to Mother and Father.[1] On November 29, 2017, Father filed a petition for modification and contempt. Following a hearing, the trial court entered an order of custody on July 24, 2018 that awarded shared legal custody of the Children to Mother and Father and primary physical custody of the Children to Father with partial physical custody rights awarded to Mother. The order also found Mother in contempt of the September 17, 2015 consent custody order for "willfully disparaging Father" and imposed sanctions. (Order of court, 7/24/18 at 15.) Mother filed a timely notice of appeal to this court, which was docketed at No. 1394 MDA 2018. On October 5, 2018, this court dismissed Mother's appeal for failure to file a docketing statement as required by Pa.R.A.P. 3517.

---

[1] We note that the order is dated September 16, 2015, but was entered on the docket on September 17, 2015.

On January 17, 2019, Father filed a petition for contempt and modification, which included a request to relocate. Because the parties were unable to reach an agreement to resolve the issues raised in Father's petition, the trial court entered an interim custody order, pending trial. (Order of court, 2/19/19.[2]) In the order, the trial court directed that its July 24, 2018 custody order that awarded shared legal custody of the Children to Mother and Father and primary physical custody of the Children to Father, subject to Mother's partial physical custody rights, remain in effect with certain modifications. (*Id.* at 3.) The modifications included prohibiting Mother from being present at, or transporting the Children to, the Children's counseling sessions, unless Mother's attendance was specifically requested or authorized by the Children's therapist, and requiring Mother to sign a release for Mother's counselor to speak with the Children's therapist. (*Id.*) On February 28, 2019, Father filed a petition for suspension of Mother's custodial rights wherein he alleged Mother's various violations of the trial court's July 24, 2018 custody order. The trial court scheduled a hearing on the petition for April 5, 2019.

On March 18, 2019,[3] the trial court entered an order scheduling the custody trial to begin on June 20, 2019. On April 3, 2019, the parties filed a praecipe evidencing their agreement to cancel the hearing on Father's petition

---

[2] We note that the order is dated February 15, 2019, but was entered on the docket on February 19, 2019.

[3] The order is dated March 15, 2019, but was entered on the docket on March 18, 2019.

for suspension of Mother's custodial rights scheduled for April 5, 2019, and resolve the issue at the custody trial. (Praecipe, 4/3/19.) On April 5, 2019,[4] the trial court entered an order directing that all pending issues would be remanded for determination at the custody trial.

On May 7, 2019, Mother filed an application for a continuance of the custody trial because her experts, Deb Salem and Dr. Julie Medlin,[5] would be unable to "finish their reports in time, providing good cause for up to 60 days." (Mother's application for continuance, 5/7/19 at 1, ¶ 3.) Following a status conference, the trial court granted Mother's request for a continuance and rescheduled the custody trial to begin on July 15, 2019, and continue to July 16, 2019. (Order of court, 5/23/19 at 2.[6]) The trial court also set aside the morning of August 2, 2019, to "afford [Mother] an opportunity to timely secure her expert reports and exchange them and to present testimony from Miss Salem on that date." (*Id.*)

When trial commenced on July 15, 2019, Father presented an oral motion *in limine* wherein he objected to the admission into evidence of Ms. Salem's report, as well as her testimony, because Mother failed to timely

---

[4] We note that the order is dated April 4, 2019, but was entered on the docket on April 5, 2019.

[5] Mother engaged Ms. Salem, a counselor, to prepare a custody evaluation. (Mother's brief at 7.) Mother engaged Dr. Medlin, a psychologist, to conduct psychological testing. (*Id.*)

[6] We note that the order of court is dated May 16, 2019, but was filed on May 23, 2019.

submit the report to Father. (Notes of testimony, 7/15/19 at 4-5.) The record reflects that following the trial court's May 23, 2019 grant of Mother's request for a continuance of trial, Father agreed to extend the due date of the delivery of Ms. Salem's report to July 2, 2019. (*Id.* at 4.) Thereafter, Father again agreed to extend the deadline to July 8, 2019. (*Id.* at 5.) Mother conceded that she did not submit the report until July 10, 2019, but claimed that her untimeliness did not prejudice Father; rather, she claimed that Father objected only because he did not like the conclusions contained in Ms. Salem's report. (*Id.* at 6.) The trial court pointed out that the report was due in June[7] and that Father's counsel twice extended the deadline as a courtesy to Mother, but Mother still delivered the report 48 hours late. (*Id.*) As such, the trial court precluded Ms. Salem's report and testimony because Mother violated Pa.R.Civ.P. 1915.8, as well as the trial court's scheduling order. (*Id.* at 13.)

The trial court heard evidence on July 15 and 16, 2019. Trial was then recessed until August 2, 2019, at which time the trial court would hear expert evidence. On July 16, 2019, Mother filed another application for continuance

---

[7] Pa.R.Civ.P. 1915.8 requires that a party that intends to introduce an expert report regarding a physical and/or mental examination in a custody case to deliver the report to the trial court and the opposing party at least 30 days before trial. Here, trial was scheduled to commence on July 15, 2019. As such, but for Father's grant of two extensions, Ms. Salem's report was due on June 17, 2019. We further note that the 30th day prior to the start of trial was June 15, 2019, which fell on a Saturday. Whenever the last day of any period of time referred to in any statute falls on a Saturday, Sunday, or legal holiday, such day is omitted from the time computation. *See* 1 Pa.C.S.A. § 1908.

wherein she stated that "Dr. Medlin is not available to testify on August 2, 2019 and her testimony is necessary." (Mother's application for continuance, 7/16/19 at 1, ¶ 3.) By order entered July 18, 2019, the trial court denied Mother's request for continuance, noting Father's opposition. (Order of court, 7/18/19.[8]) On July 23, 2019, Mother filed a motion to request an interlocutory appeal to this court and an application for *supersedeas* pending appeal to this court. The motions court denied the motion as premature because trial was not complete. (Order of court, 8/1/19.)

When trial resumed on August 2, 2019, Mother renewed her request for an interlocutory appeal. (Notes of testimony, 8/2/19 at 4.) Mother also informed the trial court that Dr. Medlin would not be available to testify and again requested a continuance. (*Id.* at 10-11.) The trial court denied both requests. (*Id.* at 12-14.)

Following entry of the Custody Order, Mother filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Rule 1925(a)(2)(i). Father then filed a timely notice of cross-appeal, together with a Rule 1925(a)(2)(i) statement, which was docketed at No. 1629 MDA 2019. The trial court filed a Rule 1925(a)(2)(ii) opinion. By order entered on October 24, 2019, this court *sua sponte* consolidated Mother's appeal and Father's cross-appeal. (Order of court, 10/24/19.)

---

[8] We note that the order of court is dated July 17, 2019, but was entered on the docket on July 18, 2019.

In her appeal of the Custody Order, Mother raises the following issues:

1. Did the trial court commit an error of law or abuse of discretion when applying Pa. R.C[iv].P. 1915.8(b) and Pa. R.C[iv].P. 1915.4, refusing to allow Deb Salem, MHS, CAACD, LPC, to testify as an expert?

2. Did the trial court commit an error of law or an abuse of discretion when interpreting and applying Pa. R.C[iv].P. 216 and Pa. R.C[iv].P. 1915.4, refusing to allow a continuance to procure the testimony of Dr. Julie Medlin?

3. Did the trial court abuse her discretion when appointing Father as sole legal custodian for the purpose of enrolling the [C]hildren with a new counseling practice, though Father is the parent who has been unwilling to work toward compliance with this requirement?

4. Did the trial court abuse her discretion in failing to place adequate safeguards on the [C]hildren when exposed to a child known to have engaged in prior sexual acts with the [C]hildren?

5. Did the trial court abuse her discretion in ordering Mother's partial physical custody to be subject to "immediate termination" if Mother discusses the children's prior sexual trauma with her [C]hildren or any topic with "sexual themes" where the [C]hildren may hear?

6. Did the trial court abuse her discretion in ordering both a release to Father of Mother's mental health records and a specific psychological treatment for Mother?

7. Did the trial court abuse her discretion in finding Mother in contempt of court and ordering her to pay a portion of Father's attorney fees?

8. Did the trial court commit an error of law or abuse her discretion in ordering automatic

restrictions on Mother's visitation as an additional punishment if Mother does not timely comply with the consequences ordered on her for being found in contempt of court, namely enrollment in and completion of a specific training program?

9. Did the trial court abuse her discretion in her analysis of the child's best interest factors and the ultimate conclusion appointing Father as primary custodian of the [C]hildren, subject to Mother's partial custody?

Mother's brief at 3.

In custody cases under the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340,

[w]e review the trial court's custody order for an abuse of discretion. We defer to the trial court's factual findings that are supported by the record and its credibility determinations. However, we are not bound by the trial court's deductions or inferences, nor are we constrained to adopt a finding that cannot be sustained with competent evidence. In sum, this Court will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings.

The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being.

*M.G. v. L.D.*, 155 A.3d 1083, 1091 (Pa.Super. 2017), *appeal denied*, 169 A.3d 522 (Pa. 2017) (internal citations and quotation marks omitted).

In her first and second issues, Mother claims that the trial court misapplied certain Pennsylvania Rules of Civil Procedure.

"The correctness of [a] trial court's application of a Rule of Civil Procedure raises a pure question of law. As with all questions of law, our standard of review is ***de novo*** and our scope of review is plenary." ***Harrell v. Pecynski***, 11 A.3d 1000, 1003 (Pa.Super. 2011) (internal citations omitted).

With respect to Ms. Salem, Mother claims that the trial court misapplied Rules 1915.8(b) and 1915.4 when it precluded her testimony. With respect to Dr. Medlin, Mother claims that the trial court misapplied Rule 216, as well as Rule 1915.4. Mother does not explain why she contends that the trial court misapplied Rule 216. Rather, Mother states that "the arguments of these two issues [are] the same" and she "will not repeat them." (Mother's brief at 15.) Because Mother wholly fails to set forth an argument regarding her claim of misapplication of Rule 216, Mother waives that aspect of her second issue. ***See Empire Trucking Co. v. Reading Anthracite Coal Co.***, 71 A.3d 923, 932 n.1 (Pa.Super. 2013) (reiterating that failure to set forth legal argument results in waiver).

Rule 1915.8 sets forth the procedural rules regarding physical and mental examinations in custody actions. Rule 1915.8(b) requires that "[a]ny report which is prepared at the request of a party, with or without a court order, and which a party intends to introduce at trial, must be delivered to the court and the other party **at least thirty days before trial**." Pa.R.Civ.P. 1915.8(b) (emphasis added). Rule 1915.4 sets forth the

procedural rules regarding the prompt disposition of custody cases. Rule 1915.4(b) provides, in pertinent part:

**Prompt Disposition of Custody Cases**

. . . .

**(b)** **Listing Trials Before the Court**. Depending upon the procedure in the judicial district, within 180 days of the filing of the complaint either the court shall automatically enter an order scheduling a trial before a judge or a party shall file a praecipe, motion or request for trial, except as otherwise provided in this subdivision. If it is not the practice of the court to automatically schedule trials and neither party files a praecipe, motion or request for trial within 180 days of filing of the pleading, the court shall dismiss the matter unless the moving party has been granted an extension for good cause shown, which extension shall not exceed 60 days beyond the 180 day limit.

Pa.R.Civ.P. 1915.4(b); *see Harrell*, 11 A.3d at 1005 (Pa.Super. 2011) (affirming order dismissing custody action based on Rule 1915.4, which requires dismissal of action if trial not scheduled within 180 days of filing of pleading or if moving party has not been granted extension for good cause shown); *see also Dietrich v. Dietrich*, 923 A.2d 461 (Pa.Super. 2007) (vacating custody order where father did not request trial within 180-day period and no extension of time was granted).

Here, Mother contends that because trial began within 180 days of Father's filing of the action and because Rule 1915.4(b) permits a 60-day extension, the trial court should have granted Mother's continuance because

"[t]here was plenty of time remaining in the 45 days the trial court had to complete the trial once it began." (Mother's brief at 17.) Mother further claims that a continuance would give Father "additional time to prepare his rebuttal if needed." (*Id.* at 13.) Although Mother claims that the trial court misapplied the rules, it is Mother who misapprehends them.

Contrary to Mother's assertion, Rule 1915.4 does not require a court to decide a custody case within a 180-day time period with an additional 60 days for a continuance. Rather, it requires dismissal if trial has not been scheduled within 180 days of the filing of the pleading or if the moving party has not been granted an extension for good cause shown. *Harrell*, 11 A.3d at 1005. Rule 1915.4 favors the prompt disposition of custody cases, which is consistent with the fundamental concern in custody cases, which is the best interest of the child. Here, the trial court granted Mother one continuance for the start of trial because Ms. Salem's report was not yet prepared. Father then agreed to allow Mother two extensions for delivery of the report. Nevertheless, Mother failed to timely deliver Ms. Salem's report. Consequently, the trial court prohibited her testimony for Mother's violation of Pa.R.Civ.P. 1915.8, as well as its scheduling order. On August 2, 2019, the day scheduled for expert testimony, Mother informed the trial court that Dr. Medlin was unavailable and Mother requested a continuance, which the trial court denied. Mother entirely fails to explain how the trial court abused its discretion in precluding Ms. Salem's testimony and denying her request for

a continuance of Dr. Medlin's testimony. Rather, Mother misinterprets procedural rules in an attempt to convince this court that there was additional time for Mother to present her case. Mother's argument is at odds with the applicable rules of procedure and the decisional law of this Commonwealth. We discern no abuse of discretion by the trial court in denying Mother's request to keep the record open for an additional 45 days so that Ms. Salem's untimely report and testimony could be admitted and so that Dr. Medlin may appear on a future date.

In her third issue, Mother claims that the trial court abused its discretion when, despite awarding shared legal custody, it granted Father the exclusive right to consent to counseling treatment for the Children because, according to Mother, "Father is the parent who has been unwilling to work toward compliance with this requirement." (Mother's brief at 17.)

In considering the best interest of the child factors,[9] the trial court specifically found that, with respect to Factor 10, which party is more likely to

---

[9] In custody disputes, trial courts are statutorily required to consider the 16 factors set forth in the best-interest test when determining the child's best interests. **See** 23 Pa.C.S.A. § 5328(a) ("[i]n ordering any form of custody, the court shall determine the best interests of the child by considering all relevant factors . . . ."); **see also A.V. v. S.T.**, 87 A.3d 818, 821 (Pa.Super. 2014) (reiterating that "Section 5328 provides an enumerated list of sixteen factors a trial court must consider in determining the best interests of the child or children when awarding any form of custody.").

Section 5328 of the Child Custody Act sets forth the 16-factor best-interest test, as follows:

**§ 5328.   Factors to consider when awarding custody**

**(a)   Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1)   Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2)   The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3)   The parental duties performed by each party on behalf of the child.

(4)   The need for stability and continuity in the child's education, family life and community life.

(5)   The availability of extended family.

(6)   The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

attend to the daily physical, emotional, developmental, educational, and special needs of the children, that

> [even t]hough Mother has testified that she "advocates" for the Children, her conduct has been focused on tearing down the relationship between Father and the Children and interfering with the Children's relationship with their therapist. The current therapist testified that the Children would need a new therapist due to Mother's efforts to actively sabotage the therapeutic relationship by rejecting "a collaborative therapeutic relationship." The [trial c]ourt accepts as credible the testimony from the therapist, and Father, that Mother discussed sexual issues involving the Children in the Children's presence at therapy despite admonishment from the therapist to desist. While Father has been cooperative with the therapist, Mother rejects the opinions and recommendations of the therapist as well as any other expert that does not reflect her views.

Trial court opinion, 9/5/19 at 18.

When considering the mental condition of Mother under Factor 15, the trial court noted that "[t]estimony was presented regarding alleged mental health conditions of Mother." (***Id.*** at 20.) Additionally,

---

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

42 Pa.C.S.A. § 5328(a).

- 15 -

Mother is in therapy at the present time, though she has failed to engage in the therapy previously directed as was recommended by her treatment provider at the last trial. Mother continues to engage in the same conduct which has previously caused [the trial c]ourt to impose a restriction in her time with her Children to try to protect their mental health and reduce her negative influence.

*Id.* When considering Factor 16, which permits the trial court to consider any other relevant factor, the trial court found the following relevant:

Father filed a petition for contempt of this Court's Order of July 24th, 2018 with regard to the requirement that the parents cooperate with counseling for the Children. Credible testimony from the therapist illustrates that Mother engaged in a course of conduct to undermine the therapeutic relationship and failed to cooperate with therapy. Mother discussed [A.J.'s] and [R.J.'s] past sexual conduct in their presence despite the therapist's admonishment that Mother should desist, which was corroborated by Father. When the therapist did not agree with Mother's opinions, Mother's conduct became so antagonistic Mother was banned from the therapist's practice. As a result, the therapist is no longer able to maintain a positive therapeutic relationship with the entire family and believes the Children should engage with a new therapist. This conduct is in direct violation of the prior Order.

The [trial c]ourt is concerned about Mother's continued inappropriate discussion of sexual and body themes with the Children. [The trial c]ourt found Mother in contempt for this same conduct in [its] last Order entered July 24, 2018 and ordered Mother to undergo counseling to address those issues and Mother has failed to comply. [The trial c]ourt therefore finds again that Mother has engaged in willful conduct for the purpose of interfering with [c]ourt-ordered therapy and has continued to discuss these issues with or in the presence of the Children in direct and willful violation of [the trial c]ourt's [o]rder.

- 16 -

> Though the [trial c]ourt does not find it necessary to suspend Mother's rights today, absent strict compliance with the terms of the Order which are imposed to assure the safety of the Children, the custodial time with Mother will need to be supervised to assure that she does not continue to damage their mental health or relationship with Father.

*Id.* at 20-21.

We have thoroughly reviewed the record in this case. The record supports the trial court's factual findings and its legal conclusion that it is in the Children's best interests for Father to select their counselor. We discern no abuse of discretion.

Mother next claims that the trial court abused its discretion when it failed to place adequate safeguards on the Children when they are exposed to C.D.,[10] the minor male child of Father's fiancé, who engaged in prior sexual acts with A.J. and R.J. Preliminarily, we note that in her argument on this issue, Mother refers us to texts on child sexual abuse and incest and also attaches to her brief an appendix of "secondary source material." (Mother's brief, Appendix E.) "It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in this case." *Eichman v. McKeon*, 824 A.2d 305, 316 (Pa.Super. 2003) (citation omitted); *see also* Pa.R.A.P. 1921 ("The original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of

---

[10] The record reflects that at the time of trial, C.D. was approximately eight years old. (Notes of testimony, 8/2/19 at 20.)

electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases."). Therefore, we will not consider any materials that are not part of the certified record on appeal.

In its opinion, and with respect to Father's request for relocation, the trial court noted that although Mother continues to raise concerns about sexual incidents that occurred between C.D. and A.J. and R.J., the incidents occurred over a year ago, no additional incidents have occurred since then, and neither Father nor the Children's therapist believes the Children are currently at risk. (Trial court opinion, 9/5/19 at 12-13.) Therefore, the trial court determined that C.D. did not pose a risk of harm to the Children. Nevertheless, the record reflects that the trial court entered an order on June 26, 2018, that required that any contact between the Children and C.D. be supervised until further order. (Order of court, 6/26/18). Nothing in the record shows that the trial court vacated or modified the June 26, 2018 order. Therefore, Mother's claim that the trial court failed to safeguard the Children when they are in C.D.'s presence lacks record support.

Mother next complains that the trial court abused its discretion when it included in its Custody Order that "[i]n the event that Mother engages in any discussion with, or in the hearing distance of, the Children regarding sexual themes, then her periods of custody shall immediately terminate and the Children shall return to Father or his designee." (Custody order at 20;

*see also* Mother's brief at 23-24.) Mother claims that this constituted an abuse of discretion because the trial court entered this part of the order without a fully developed record because it prohibited Ms. Salem and Dr. Medlin from testifying. We have disposed of Mother's arguments regarding her expert witnesses, and we decline Mother's invitation to address them again.

Mother next claims that the trial court abused its discretion "in ordering both a release to Father of Mother's mental health records and a specific psychological treatment for Mother." (Mother's brief at 26.) The challenged portion of the Custody Order states:

> Mother shall participate in counseling, at her expense, and with the qualified therapist of her choosing. Counseling should initially focus on insight and awareness to assist Mother with viewing alternative explanations and effective control of her anger. Mother's counseling shall specifically address the issue of her obsession with and views on the Children's prior inappropriate conduct and she shall work with the therapist to develop proper coping mechanisms and appropriate communication skills to utilize with the Children. The new counselor shall specifically consider the E[MD]R[11] therapy previously ordered by this Court and determine whether such therapy is appropriate to address Mother's conduct. Mother shall comply with treatment recommendations of the therapist. **If the therapist determines that EMDR therapy is not appropriate, Mother shall request a report from the therapist detailing the reasoning for his/her findings.** That report shall be provided to Father's counsel within thirty (30) days of any request, Mother shall execute a release to

---

[11] Eye Movement Desensitization and Reprocessing therapy.

- 19 -

> authorize Father to verify her compliance with this provision.

Custody Order at 10 (emphasis added).

Contrary to Mother's claim, the Custody Order did not require Mother to sign a release so that Father could obtain her mental health records. The order clearly states that if Mother's new therapist determines that EMDR therapy is not appropriate for Mother, Mother must request that the therapist issue a report detailing the reasons as to why EMDR therapy is not appropriate for Mother. It is that report, and only that report, that shall be provided to Father's counsel. Moreover, although Mother describes the court-ordered counseling as "involuntary," we note that Section 5333 of the Custody Act authorizes a trial court to require the parties to attend counseling as part of a custody order. 23 Pa.C.S.A. § 5333(a). We further note that Mother provides no argument as to why a requirement that she undergo counseling would not be in her Children's best interests. We discern no abuse of discretion.

In her seventh issue, Mother claims that the trial court abused its discretion in finding Mother in contempt of its July 24, 2018 custody order and ordering her to pay a portion of Father's attorney's fees. (Mother's brief at 29.) In her argument on this issue, Mother claims that the July 24, 2018 custody order "is very clear in certain prohibitions and very vague in others." (*Id.* at 30.) Mother then sets forth her interpretation of various provisions of the July 24, 2018 custody order and testimony from the custody trial in order

to convince this court that she was not in contempt. To the extent that Mother claims that certain provisions of the July 24, 2018 custody order are unenforceable because she was uncertain of the prohibited conduct due to vague and indefinite conditions of the order, Mother waives this issue for failing to raise it with the trial court. *See* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."). To the extent that Mother requests that we reweigh the evidence in order to reach her desired result, we decline Mother's invitation. Where, as here, the record supports the trial court's factual findings, we defer to the trial court. *See M.G.*, 155 A.3d at 1091.

In her eighth issue, Mother complains that the trial court abused its discretion in "ordering automatic restrictions on [her] visitation as an additional punishment if Mother does not timely comply with the consequences ordered on her for being found in contempt of court, namely enrollment in and completion of a specific training program." (Mother's brief at 33.)

The record reflects that the trial court found Mother in contempt for violating its July 24, 2018 custody order "for willfully disparaging Father, continuing to discuss sexual topics with and in the presence of the Children, and failing to cooperate with the Children's therapy as required." (Custody Order, at 19.) In anticipation of Mother's continued violations of its orders, the trial court included a provision that if "Mother continues to violate [the trial c]ourt's [o]rders and continues to engage in a course of conduct designed

to incite conflict between the parties and alienate the Children from Father," Mother shall participate in high-conflict behavioral skills training. (*Id.*) The trial court also ordered that if Mother did not complete the training, then her rights of partial physical custody would be supervised. (*Id.* at 20.) The trial court further ordered that if "Mother engages in any discussion with, or in hearing distance of, the Children regarding sexual themes, then her periods of custody shall immediately terminate and the Children shall return to Father or his designee." (*Id.*)

Mother requests us to inquire into the propriety of future sanctions in the event that Mother violates the Custody Order. Because there is no violation of the Custody Order before us that resulted in a finding of contempt and imposition of sanctions set forth in the Custody Order, a review of this issue would be premature and improper.

In her final issue, Mother claims that the trial court abused its discretion when analyzing the best-interest factors.

At the outset, we note that the trial court found that Factor 2 (past abuse), Factor 3 (parental duties performed by each party); Factor 5 (availability of extended family); Factor 7 (well-reasoned preference of child); Factor 11 (proximity of parties' residences); and Factor 12 (ability to care for child) weighed in favor of neither party. The trial court found that Factor 6 (child's sibling relationship) favored keeping the Children on the same

schedule with supervision. The trial court determined that Factor 14 (drug or alcohol abuse) was not an issue.

The trial court determined that the following factors weighed in Father's favor: Factor 1 (which party more likely to encourage and permit frequent contact between child and other party); Factor 9 (which party most likely to maintain loving, stable, consistent relationship with child adequate for child's emotional needs); Factor 10 (which party more likely to attend to daily physical, emotional, developmental, educational, and special needs of child); Factor 13 (level of conflict between parties and willingness and ability to cooperate with one another); Factor 15 (mental and physical condition of party); and Factor 16 (any other relevant factor). With respect to Factor 13, the trial court noted that it weighed "heavily" in Father's favor. (*Id.* at 19-20).

Mother specifically complains that the trial court abused its discretion in finding that Factor 2 (which party can better provide adequate physical safeguards and supervision) and Factor 12 (each party's availability to care for the child) to be neutral and Factor 13 (level of conflict between the parties) to weigh heavily in Father's favor.

With respect to Factor 2, the trial court found that:

> Mother continues to make allegations that appear, by all testimony, to be baseless. Though Mother alleges that Father has left the Children unsupervised with [C.D.] in violation of the Order, she failed to present any evidence of this claim. Evidence she did present involved an incident where only [A.J.] and [R.J.] rode bikes to a park alone without helmets. While the Court recognizes that the Children's lack of

appropriate safety gear at Father's house is concerning, it is not a direct violation of the Order and does not indicate a risk of harm or abuse in Father's home. The Court has imposed a supervisor requirement as it relates to the Children's contact with [C.D.] and will address better safeguards and supervision by each parent in the accompanying Order. This factor does not weigh in favor of either party.

*Id.* at 14-15.

With respect to Factor 12, the trial court found that

neither parent has extended family available to assist with the children. Both parents testified that, under the current circumstances, they are each available to pick up the Children from school and care for them if needed. The Children also have before and after school care. It is clear, however, from the evidence presented that the Children's negative behavior and delinquent acts warrant an increase in the supervision which will be addressed in the accompanying Order. This factor is neutral.

*Id.* at 19.

With respect to Factor 13, the trial court found that

[t]here is a high level of conflict between the parties, largely as a result of Mother's conduct, but also due to Father's approach to the conflict. Though Father has requested that Mother's rights be suspended, it is in response to Mother's conduct exacerbating an already difficult situation. Mother failed to cooperate with the Children's court-ordered counseling, continues to openly disparage Father with accusations of a "pornography addiction[,"] and continues to rehash the prior inappropriate conduct by [A.J.] and [R.J.] with [C.D.] in order to prevent the families and the Children from moving on. It is apparent to the [trial c]ourt that Mother requires more therapeutic intervention as there are safety concerns related to her conduct toward the Children, Father, however,

> does not even attempt to co-parent with Mother as it relates to the Children's care. At some point, the parties must work together to consistently parent the Children. This factor heavily favors Father and a directive for the parties to engage in co-parenting counseling.

*Id.* at 19-20.

We have thoroughly reviewed the record in this case and conclude that there is no reason to disturb the Custody Order. The trial court thoroughly considered the evidence and made appropriate determinations on credibility and weight. The trial court applied all of the Section 5328(a) factors and concluded that it is in the best interests of the Children that shared legal custody of the Children be awarded to Mother and Father and primary physical custody of the Children be awarded to Father. The record supports the trial court's findings that formed the basis of its decision and its conclusions are reasonable as demonstrated by the evidence. Therefore, no relief is due.

In his cross-appeal, Father raises the following issues:

1. [Whether t]he trial court erred as a matter of law in applying the relocation factors and case law governing relocation in a child custody case[?[12]]

2. [Whether t]he trial court erred in making a finding of fact in relation to the question of preserving the relationship between the non-relocating party and the [C]hildren when it indicated:

---

[12] The record reflects that Father sought to relocate from York, Pennsylvania to the Hummelstown/Hershey area. (Custody Order, at 11.)

"Father has proposed adding additional holidays and more time over summer vacations, however it is the loss of the regular contact that is the issue. Father has not given significant thought to how his relocation would affect [M]other's time with the [C]hildren nor does he have a concrete plan["?]

3.     [Whether] the trial court erred in making a finding of fact in relation to the question of whether the relocation will enhance the general quality of life of the party seeking the relocation when it indicated:

"However, Father's work is currently accommodating him by providing an office in York County so we do not find this reasoning credible. Father can, and currently does, work from York and could continue to do so["?]

4.     [Whether t]he trial court erred in making a finding of fact that the proposed move to Hummelstown/Hershey area from York was "an extreme distance" which would significantly impact Mother's rights to partial custody[?]

5.     [Whether t]he trial court erred in making a finding of fact in relation to whether the relocation will enhance the general quality of life for the [C]hildren by indicating:

"The majority of the testimony from both parents was centered in the past, rather than looking forward to what would be best for the [C]hildren["?]

6.     [Whether t]he trial court erred in its analysis when it indicated:

> "Considering all of the factors, the [trial] court finds that overall that Father has failed to carry his burden. Father's purpose in relocating is clearly to benefit the travel time of his fiancée with little thought given as to whether the relocation would provide any measurable benefit to the [C]hildren. Further, the relocation would significantly impact Mother's custody and Father proposes no viable solutions["?]

Father's brief at 4-6 (emphasis omitted).

At the outset, we note that Pa.R.A.P. 2136 addresses briefs in cases involving cross-appeals. In a cross-appeal, the moving party is deemed the appellant for purposes of Chapter 21 of the Rules of Appellate Procedure, which addresses briefs and reproduced records. Because Father is deemed the appellant in his cross-appeal, Father was required to adhere to Pa.R.A.P. 2119, which requires that the argument section of his brief be divided into as many parts as there are questions to be argued and have at the head of each part the particular point treated therein. Pa.R.A.P. 2119(a).

Here, even though Father raises six issues in his statement of questions involved, Father states that he "will divide his argument into two distinct sections, the first encompassing the trial court's findings and the second involving the application of the findings to the custody relocation statute and case law." (Father's brief at 16.) Father further states that "the matters complained of on appeal numbers two, three, four, and five will be argued

together in the first part of the argument, and numbers one and six will be argued together in the second part of the argument." (*Id.*) Father has clearly violated Rule 2119(a), and this violation hampers an issue-by-issue review.

Notwithstanding this violation, we note that in the first section of his argument, Father does nothing more than set forth select portions of testimony in an effort to convince this court to reach a different result. We have thoroughly reviewed the record in this case. The record supports the trial court's factual findings, and we will not disturb them. In the second section of his brief, Father sets forth the trial court's analysis of certain relocation factors and then offers his opinion as to why the analysis was incorrect. For example, Father points out that the trial court determined under relocation Factor 2 (impact relocation will have on child's physical, educational, and emotional development)[13] that because relocation would

---

[13] With respect to relocation, the court must consider the following factors:

> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements,

necessitate a change in the Children's schools, before and after school care, and medical providers, the trial court erred because "every relocation case is going to require a change in the children's school district, and likely will also require a change in the children's before and after school care and medical providers." (Father's brief at 37.) Father entirely fails to show that the trial

considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

court's consideration of the ten relocation factors and its denial of relocation was not in the Children's best interests. Instead, Father "submits that if the factual underpinnings regarding the [trial] court's findings are vacated[, then] the record demonstrates he has easily met his burden of proof with regard to the relocation factors." (*Id.* at 39.) Our standard of review, however, requires us to defer to the trial court's factual findings where, as here, the record supports those findings. *See M.G.*, 155 A.3d at 1091.

In its thoughtful consideration of the relocation factors, the trial court determined that Factor 1 (relationships with non-relocating party, siblings, and other significant person's in child's life) slightly favored relocation. With respect to Factor 2 (impact of relocation on child's physical, educational, and emotional development), the trial court determined the factor favored neither party. The trial court found that Factor 3 (feasibility of preserving relationship between non-relocating party and child) weighed slightly against relocation because relocation would adversely impact Mother's time with the Children. The trial court determined that Factor 4 (child's preference) was neutral. The trial court further found that Factor 5 (established pattern of conduct to promote or thwart relationship with other party) favored Father's relocation because of Mother's "established pattern of efforts to thwart the relationship of the Children with Father." (Trial court opinion, 9/5/19 at 11.) The trial court determined that Factor 6 (whether relocation would enhance the general

quality of life for the party seeking to relocate) weighed against relocation, and it noted that

> Father asserts that the reason for relocation is to improve his family's situation and that working in Harrisburg will yield him more income and better opportunity for advancement. However, Father's work is currently accommodating him by providing an office in York County so [the trial court does] not find this reasoning credible. Father can, and currently does, work from York and could continue to do so. Additionally, [the trial court] note[s] that Father's paramour testified that she has not obtained permission from her own children's father for the proposed relocation and had no concrete plans.
>
> Further, there is no justification for the extreme distance of the move—from York to Hummelstown/Hershey area—when Father could move a shorter distance toward Harrisburg and remain in York County without significantly impacting Mother's custody. Though Father classified his proposed move as a "short distance to Dauphin County[,"] the location he has selected is on the far eastern side of Dauphin County, near the Lebanon County border. . . . [T]his factor weighs against relocation.

Trial court opinion, 9/5/19 at 11.

With respect to Factor 7 (whether relocation will enhance child's quality of life), the trial court determined that because the testimony focused on the past instead of looking forward to the Children's best interests, the factor weighed against relocation. (***Id.*** at 12.)

With respect to Factor 8 (reasons and motivation of each party for seeking or opposing relocation), the trial court determined that this factor did not weigh in favor of either party. In considering this factor, the trial court

noted that Father's reasons for relocation "are primarily for his own self-interest rather than the overall best interests of the Children" and Mother's opposition is her belief that Father is trying to take the Children from her and that the distance will make it difficult for her to participate in the Children's activities and school events. (*Id.*)

The trial court also found that Factor 9 (present or past abuse committed by a party or member of party's household and whether a continued risk of harm exists) was neutral for the reasons set forth previously in this memorandum. It finally determined that Factor 10 (any other factor affecting child's best interest), weighed in favor of neither party.

Following consideration of all of the relocation factors, the trial court concluded that

> Father has failed to carry his burden. Father's purpose in relocating is clearly to benefit the travel time of his fiancé with little thought given as to whether the relocation would provide any measureable benefit [to] the Children. Further, the relocation would significantly impact Mother's custody and Father proposes no viable solutions.

*Id.* at 13.

Our review of the record demonstrates that the record supports the trial court's factual findings and its legal conclusions are free of error.

Order affirmed.

- 32 -

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>05/11/2020</u>